UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

US LOGISTICS, LLC,                                          Case No. 1:15-cv-273

      Plaintiff,                                          Judge Timothy S. Black

vs.

WEST EDGE FREIGHT, INC., *et al.*,

      Defendants.

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR DEFAULT JUDGMENT (Doc. 6)

This civil action is before the Court on Plaintiff's motion for default judgment.

(Doc. 6).  Defendants did not respond.

## I.    PROCEDURAL HISTORY

Plaintiff[1] filed its Complaint on April 24, 2015.  (Doc. 1).  Defendants West Edge

Freight, Inc.,[2] Rick Howard,[3] Maria Soloranzo,[4] and Filipe Lozano[5] were served with a

---

[1] Plaintiff is a New Mexico limited liability company which serves as a transportation broker properly licensed under the Department of Transportation's regulations.  (Doc. 6, Ex. 1 at ¶ 3). Plaintiff's principal place of business is located at 901 Adams Crossing, Cincinnati, Ohio 45202.

[2] Defendant West Edge is a Nevada corporation with its principal place of business located at 3247 N. 38th Street, McAllen Texas 78501. (Doc. 6, Ex. 1 at ¶ 4).  West Edge, at all times relevant hereto, was also a licensed DOT transportation broker.  (*Id.*)

[3] Defendant Rick Howard is a resident of the State of Texas who is the day-to-day operations manager of Defendant West Edge.  (Doc. 6, Ex. 1 at ¶ 5).  Howard is also married to West Edge's President, Defendant Maria Soloranzo.  (*Id.*)

[4] Defendant Soloranzo is a resident of the State of Texas.  (Doc. 6, Ex. 1 at ¶ 6).  She is the President of West Edge, assists in operating West Edge's business, and is the wife of Defendant Howard.  (*Id.*)

[5] Defendant Felipe Lozano, Jr. is a resident of the State of Texas.  (Doc. 6, Ex. 1 at ¶ 7).  Lozano is an employee of West Edge and also assists in operating West Edge's business.  (*Id.*)

copy of the summons and complaint on April 27 and 28, 2015.  (Doc. 3).  Pursuant to

Federal Rule of Civil Procedure 12(a)(1)(A), Defendants were required to file and serve

their answers no later than May 18 and 19, 2015.  To date, no responsive pleadings have

been filed or served.  On May 21, 2015, the Clerk properly entered default.  (Doc. 5).

Subsequently, Plaintiff filed the instant motion for default judgment.  (Doc. 6).

## II.    FACTUAL BACKGROUND

Defendants all agreed to assist Plaintiff in performing transportation brokerage

services as independent contractors pursuant to an Agreement for Business Development

("the Agreement").  (Doc. 6, Ex. 1 at ¶ 8).[6]  Pursuant to the Agreement, Plaintiff agreed

to pay Defendant West Edge for soliciting business, dispatching shipments, and assisting

it with broker activities.  (*Id.*)  Specifically, West Edge agreed to locate customers for

Plaintiff who needed goods shipped from one point to another (known as "shippers" in

the transportation industry), and to coordinate these shipments on behalf of Plaintiff with

both the shippers and the trucking companies who transported the shipments (known as

"vendors" in the trucking industry).  (*Id.*)  However, instead of Defendants assisting

Plaintiff, Defendants instead began: (1) redirecting payments to West Edge that were in

fact due to Plaintiff; and (2) acting as a broker on their own behalf without remitting any

payments to Plaintiff despite the fact that Plaintiff was continuing to pay West Edge and

vendors for transporting the shipments.  (*Id.*)  Defendants further fraudulently informed

---

[6] Plaintiff and West Edge entered into the Agreement on or about January, 2013.  (Doc. 6, Ex. 1
at ¶ 9).  Pursuant to the Agreement, West Edge agreed to serve as an independent contractor for
Plaintiff.  Defendant Soloranzo signed the Agreement on behalf of West Edge in her capacity as
President of West Edge.  (*Id.*)

numerous shippers that those shippers should pay Defendants directly for the brokerage services which Plaintiff was financing so that Defendants could unlawfully keep all of the fees for these brokerage services and cut Plaintiff out of its fees to which it was contractually entitled.  (*Id.*)

Pursuant to the Agreement, Plaintiff agreed to provide credit to West Edge, advance capital to West Edge, and manage all the administrative services necessary for West Edge to assist Plaintiff with its brokering activities.  (Doc. 6, Ex. 1 at ¶ 10).  In exchange, West Edge, on behalf of Plaintiff, agreed to develop and solicit freight transportation services for Plaintiff by identifying and soliciting shippers for freight transportation.  (*Id.*)

In exchange for West Edge's services, Plaintiff would pay West Edge 70% of the gross profits, after vendor costs, for every shipment West Edge was responsible for securing.  If a shipper failed to pay Plaintiff for the amount invoiced to the shipper, West Edge assumed responsibility for the unpaid invoice and was required to reimburse Plaintiff for any advances made by Plaintiff, expenses incurred by Plaintiff, and other unpaid amounts owed to Plaintiff as a result of the unpaid invoice.  (Doc. 6, Ex. 1 at ¶ 11).

Beginning in 2014, West Edge, through the actions of the individual Defendants, began to fraudulently inform certain shippers that those shippers should pay West Edge or one or more of the individual Defendants directly instead of paying Plaintiff.  (Doc. 6, Ex. 1 at ¶ 12).  If the shippers agreed to pay West Edge or the individual Defendants directly, West Edge and/or the individual Defendants kept the entire amount paid and did

not disclose to Plaintiff that West Edge and/or the individual defendants had been paid. (*Id.*)

On other shipments, West Edge would inform Plaintiff that a shipment had been arranged for a certain shipper when, in fact, the shipment had been performed for another shipper and the shipper for whose benefit the goods were actually transported paid West Edge directly for West Edge's brokerage services.  (Doc. 6, Ex. 1 at ¶ 13).  Thus, Plaintiff would bill a shipper who did not actually receive any brokerage services from either Plaintiff or West Edge and that shipper therefore obviously refused to pay Plaintiff for these phantom brokerage services.  (*Id.*)

On still other shipments, the shippers simply failed to pay Plaintiff for the shipments arranged by West Edge for reasons which remain unknown to Plaintiff, even though Plaintiff has already paid West Edge in full for arranging those shipments.  (Doc. 6, Ex. 1 at ¶ 14).  To date, West Edge owes Plaintiff a total of $265,521.00 for shipments that West Edge was supposed to broker on behalf of Plaintiff, but for which Plaintiff has not received any payment.

## III.    STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven."  *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09cv298, 2010 U.S. Dist.

LEXIS 86241, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319. 1323 (7th Cir. 1983)).

While liability may be shown by well-pleaded allegations, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, No. 07-14004, 2010 U.S. Dist. LEXIS 62027, at *5 (E.D. Mich. June. 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.*, No. 2:07cv990, 2010 U.S. Dist. LEXIS 36756, at *1 (S.D. Ohio Mar. 12, 2010).

## IV.   ANALYSIS

Defendants having defaulted, the factual allegations in the complaint, except those related to the amount of damages, are deemed true. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). To ascertain an uncertain sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12cv962, 2012 U.S. Dist. LEXIS 116166, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.*, No. 206-cv-487, 2007 U.S. Dist. LEXIS 3118, at *2 (S.D. Ohio Jan. 16, 2007).

As established by the facts set forth in the Complaint, as well as Plaintiff's affidavit and spreadsheet, Plaintiff is entitled to damages against the Defendants, jointly and severally, in the amount of $265,521.00.

## V.    CONCLUSION

Based on the foregoing, Plaintiff's motion for default judgment (Doc. 6) is **GRANTED**.  The Clerk shall enter Judgment in favor of Plaintiff and against Defendants West Edge Freight, Inc., Rick Howard, Maria Soloranzo, and Filipe Lozano, Jr., jointly and severally, in the amount of $265,521.00, whereupon this civil action is **TERMINATED** on the docket of this Court.

   **IT IS SO ORDERED**.

Date:  7/10/15                                            *s/ Timothy S. Black*
                                                          Timothy S. Black
                                                          United States District Judge